## CARSON v. HARRIS.

A steamboat, as carrier, received boxes of goods in apparent good order at Galena, and delivered them to the consignee at Dubuque, on the same day in like apparent good order. On opening the boxes, it appeared that the goods had been wet a day or more before they were shipped on the steamboat; held, that the consignee had no right to set off the damages against the bill of the carrier, for the charges advanced and the freight; that the external appearances of the boxes, at the time they were delivered to the carrier, was not a true test of the internal condition, nor was the bill of lading conclusive that the goods inside of the boxes were in good condition.

Where one common carrier receives goods from a forwarding merchant, in apparent good order, and subsequent to the delivery to the consignee, it appeared that the goods had been previously wet and injured by some other carrier; held, that the carrier who last received the goods was not liable for the injury they received while they were in charge of a previous carrier, with whom he had no connection.

A carrier, who receives goods to carry for hire, is bound to take due care of them in their passage, to deliver them safely and in the same condition as when they were received by him; or in default thereof, he is liable to the owner to make adequate compensation for any loss or damage which may happen to the goods while in his custody; but he is not liable for any loss the goods may have sustained before they came into his charge.

The public good requires the courts to relax nothing from the common law responsibility of carriers.

### Appeal from Dubuque District Court.

Opinion by GREENE, J. This action was commenced before a justice of the peace, by D. S. Harris against W. C. Carson, to recover $35 88, the amount of freight and charges on three boxes of merchandise. Defendant filed a set off of $12 00 for damages sustained to the goods while in transition from New York to Dubuque. This item of se toff was allowed by the justice of the peace, and judgment rendered for the balance in favor of plaintiff. Plaintiff appealed to the district court, where he obtained judgment for the full amount of his claim. Defendant appeals,

and still claims that his item of set off for damages should have been allowed by the court below.

We will briefly state the facts in the case, as we gather them from the bill of exception It appears that the boxes were shipped from New York in the spring of 1853, and marked " W. C. Carson, Dubuque, Iowa," " Keep dry," and were sent by the usual lines of transportation, from one carrier to another, by the way of the lakes to Chicago; thence by railroad to Rockford, and thence by wagon to Galena, and were then delivered to G. W. Campbell & Co., forwarding merchants; that they were then shipped in the usual course of freight on board the steamer West Newton, D. S. Harris captain; that Capt. Harris paid charges and signed the usual receipt or bill of lading for the same, as being in good order and condition, and undertook to deliver them in like good order to W. C. Carson, at Dubuque; that said boxes were delivered to the agent of said carrier, and by him to said Carson, at his store; that Carson's clerk opened the boxes containing writing paper, and found the same to be wet and damaged; that the damages amounted to the sum of twelve dollars, which Carson claimed to have deducted from Harris' freight bill; that the boxes were received by Harris in apparent good order on his steamboat, were stowed by him in a safe and dry place, and delivered at Dubuque on the same day, and that from the appearance of the contents of the boxes, they must have been wet as much as forty-eight hours before they were delivered at Dubuque, and could not have been wet while upon the boat. Under the foregoing facts, the court decided that the plaintiff was not liable, and was entitled to amount of charges advanced by him, and to his freight bill.

The fact was conceded, that Harris was in no way connected with the carriers who had transported the goods to Galena, and that he paid previous charges upon the goods to the amount of thirty-three dollars. The bill of exceptions shows that the goods could not have been injured while they

were in transit from Galena to Dubuque. It appears, then, that Harris complied with the conditions upon which he received the goods. He received them in apparent good order, and undertook to deliver them in like good order. The external appearance of the boxes was not a true test of their internal condition; nor is a bill of lading, signed by a common carrier, conclusive evidence that the goods were in good condition. As Harris was not connected as a partner with the other common carriers, through whose hands the goods had passed, and as it appears, the goods were not damaged after they were received by him, but were delivered to the owner in the same apparent good order that he received them, he should not be held responsible. The damage should be paid by that carrier who suffered the goods to be injured while they were in his possession, and not by him who had promptly and faithfully performed his undertaking, in delivering the boxes in as good order as he received them. We find a case in *Bowman* v. *Hilton*, 11 Ohio, 303, which confirms our views of this case. It is decided in that case, that a common carrier, who receives goods in the ordinary course of business, and in the proper line of transit, has a lien for the freight and charges paid, although the goods may have suffered damage before they reached him, while in the hands of some prior carrier.

It would seem a self-evident proposition that one man should not be answerable for the faults of another, when they are in no way connected with the transaction. This truly catholic principle should prevade every department of the law, and every avenue of business life. To this principle there should be no exception. It is applicable to all pursuits and conditions in life. It is applicable to common carriers. A common carrier, who receives goods to carry for hire, is bound to take due care of them in their passage, to deliver them safely, and in the same condition as when they were received by him; or in default thereof, he is liable to the owner, to make adequate compensation for

any loss or damage which may happen to the goods while in his custody. But he is not liable for any damage the goods may have sustained before they came to his charge. He is not liable for the damage they received while they were in the custody of the consignee, or some other common carrier, with whom he was not interested.

It is urged that the public good requires courts to hold common carriers to a strict accountability. True; and let them be so held, for any negligence of their own, their agents and employees. But this object is not accomplished by holding one carrier responsible for the negligence of another.

The highest considerations of public policy demand that there be no relaxation of the common law responsibility of common carriers. The experience of past generations, and the trying experience of the immensely extended commerce and trade of the present day, demonstrate the necessity and wisdom of firmly adhering to common law regulations. Now that steamboats and railroad cars contain so much of the population and wealth of the world, and have so completely monopolized all public avenues and thoroughfares of the country, there is nothing in which the people have a deeper interest, than a safe and reliable management of such public conveyances. Those who have charge of them should be steadily admonished of the high moral and legal obligations resting upon them. Thousands of lives, and millions of property are yearly sacrificed, by land and by sea. These appalling losses, with alarming frequency, are traced to the want of due diligence on the part of those who are entrusted with so much. Public preservation, renders it necessary to attach heavy pecuniary responsibility to the carrier, for the result of every act of negligence, or want of diligence. They should therefore be required to furnish safe conveyances, and to employ competent and careful agents. While we would gladly co-operate to enforce such regulations, we would at the same time say, that no carrier should be

held accountable for damages occasioned by another, with whom he was in no way connected.

The record in this case discloses no error, and so far as we can arrive at the facts, as set forth in the bill of exceptions, we must conclude that the court below decided correctly.

Judgment affirmed.

*Samuels* and *Vandever*, for appellant.

*Lewis A. Thomas*, for appellee.